Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 996 | **DATE** | November 22, 2004 |
| **CASE TITLE** | Hach v Laidlaw, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion of the defendants Laidlaw Transit, Inc., Peter Widdrington and John R. Grainger for summary judgment on all remaining claims [ ] is allowed, and judgment will be entered in favor of the defendants and against the plaintiff Robert E. Hach dismissing this cause with prejudice. ENTER MEMORANDUM OPINION.

(11)   [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices MAILED by judge's staff. | | NOV 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 62 |
| | Copy to _____ | | date mailed notice | |
| KAM | courtroom deputy's initials | | KAM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |
| | | (Reserved for use by the Court) | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ROBERT E. HACH,               )
                              )
        Plaintiff,            )
                              )
    v.                        )    No. 02 C 996
                              )
LAIDLAW TRANSIT, INC., D/B/A  )
LAIDLAW EDUCATION SERVICES, PETER )
WIDDRINGTON and JOHN R. GRAINGER, )         **DOCKETED**
                              )
        Defendants.           )             **NOV 2 4 2004**

## MEMORANDUM OPINION

In an order dated November 5, 2002, we granted defendants' motion to dismiss certain of plaintiff's claims in this diversity case and denied the motion as to other claims for defamation, tortious interference with reasonable business expectancy and conspiracy to interfere with reasonable business expectancy. The parties have completed discovery and defendants now move for summary judgment on all of these claims.

## DEFAMATION

Count II of the complaint set forth a number of allegedly defamatory statements the defendant John R. Grainger made to the Laidlaw Inc. Board of Directors on October 12, 2001. One of the arguments the defendants made on their motion to dismiss Count II is that the statements in question were opinions rather than statements of fact. We agreed with the defendants on two of the



statements, but concluded that four other statements could present triable issues. It would depend on the evidence.

Before discussing each of the four statements, it will be useful to review the law of defamation as it pertains to statements of opinion.

### A.

### The Opinion Rule

Because defamation requires proof of falsity, a plaintiff must show that the statement in question is objectively verifiable as being either true or false. A statement of opinion is neither true nor false and therefore cannot qualify as defamation. Moreover, a statement of opinion is entitled to First Amendment protection.

A helpful discussion is contained in Hopewell v. Vitullo, 701 N.E.2d 99 (Ill. App. ct. 1998), where a statement that plaintiff "was fired because of incompetence" was held to be a nonactionable opinion. The Court analyzed the statement in terms of three considerations emphasized in earlier cases: first, "whether the language of the statement has a precise and readily understood meaning"; second, whether the context of the statement "negates the impression that the statement has factual content" and third, "whether the statement is susceptible of being objectively verified as true or false." Id. at 103.

We think the second Hopewell consideration — whether the context of the statement "negates the impression that the statement

has factual content" — is of no particular help in the present case, but what the court said about the first and third tests is relevant to our determination. Applying the first test to defendants' statement that plaintiff "was fired for incompetence," the Court noted:

> First, the statement does not have a precise and readily understood meaning. Regardless of the fact that "incompetent" is an easily understood term, its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning. There are numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's. Without the context and content of the statement to limit the scope of "incompetent," we cannot say that there is a precise meaning relating to the alleged defamatory statement.

In regard to the third test, the Court observed:

> Lastly, the veracity of the statement cannot be verified. Although the public might infer undisclosed and unassumed facts that support Vitullo's opinion, the statement is so ambiguous and indefinite that any inferable facts flow from numerous possible facts that might conceivably support the conclusion that Hopewell was "incompetent." ... Thus, we find that the statement is too broad, conclusory, and subjective to be objectively verifiable.

Id. at 104.

The Court concluded with the following comments:

> In conclusion, we note that in one sense all opinions imply facts; however, the question of whether a statement is actionable is one of degree. Illinois Tort Law § 5.02, at 5-5. "The vaguer and more generalized the opinion the more likely the opinion is non-actionable as a matter of law. To say that a businessman is guilty of 'poor management' is, therefore, not defamatory." Illinois Tort Law § 5.02, at 5-5. In light of the authority reviewed above, we conclude that the alleged defamatory statement--"fired because of incompetence"--is too vague

and general to support an action for defamation as a matter of law.

Id. at 105.

Another case explaining the opinion rule is Doherty v. Kahn, 682 N.E.2d 163 (Ill. App. Ct. 1997). (Ill. App. Ct. 1997), abrogated on other grounds by Soh v. Target Mktg. Sys., Inc., No. 1-03-2745, 2004 WL 2192408, at *4 (Ill. App. Ct. Sept. 30, 2004). Plaintiff alleged defamation and other claims against his former employers, who told plaintiff's prospective employers that they had discharged plaintiff because he was "incompetent," "lazy," "dishonest," that he could not "manage a business," and that he lacked "the ability to perform landscaping services." Id. at 170. The court dismissed the defamation claim and the appellate court affirmed, holding that the statements were "mere expressions of opinion" and not mixed expressions of opinion and fact, which would be actionable. Id. at 172.

Doherty cited the case of Piersall v. SportsVision of Chicago, 595 N.E.2d 103 (Ill. App. Ct. 1992), where the Court held that the statement that plaintiff was a "liar" was "merely opinion" because "there are no specific facts at the root of [the] statement, complete or incomplete, capable of being objectively verified as true or false." Id. at 107.

The opinion rule applies as well when the underlying facts are not in dispute but defendant's interpretation of those facts is expressed as an opinion. (As we will see, some of the statements

at issue in the present case are based on financial information that is not in dispute.)  In <u>Haynes v. Alfred A. Knopf, Inc.</u>, 8 F.3d 1222 (7th Cir. 1993), an author, Nicholas Lemann, and a publisher were sued for making allegedly defamatory statements concerning the plaintiff husband and wife, Southern sharecroppers who had moved to the North and were living in poverty. "The charge of libel is confined to three statements in the book: that Haynes left his children alone at night when he was supposed to be watching them; that he lost a job or jobs because of drinking; and that he spent money on a car that he should have used to buy shoes for his children." <u>Id.</u> at 1226. The district court entered summary judgment for the defendants and the Seventh Circuit affirmed, observing that the statements would be "nonactionable in any event as obvious statements of opinion ... rather than of fact." The Court explained that,

> [I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable. The facts about Kevin's condition and about the respective financial circumstances of Ruby and Dorothy were uncontested, and Ruby and Lemann were entitled to their interpretation of them. Luther drank heavily; the proposition that a man's heavy drinking can, and that Luther's heavy drinking did, damage a fetus is represented in the book merely as Ruby's conjecture. A reasonable reader would not suppose that she had proof, or even the scientific knowledge that might ground a reasonable inference. As for Luther's motives for leaving Ruby for Dorothy, they can never be known for sure (even by Luther) and anyone is entitled to speculate on a person's motives from the known facts of his behavior. Luther Haynes left a poor woman for a less

poor one, and Lemann drew a natural though not inevitable inference. [The defendants] did not pretend to have the inside dope. [They] claim insight, not information that the plaintiff might be able to prove false in a trial.

Id. at 1227 (citations omitted).

**B.**

**The Defendants' Statements**

The parties disagree about what Grainger actually said to the Laidlaw Board of Directors. The October 12, 2001 meeting of the board was held by telephone conference, and Grainger's statements were made in explanation of his decision to terminate Hach as president and CEO of Laidlaw Education. The parties have filed Local Rule 56 Statements in support of and in opposition to defendants' motion for summary judgment. Defendants' statement describes Grainger's statements to the Board as follows:

> Grainger advised the Board that he was terminating Hach's employment for the following reasons: (1) he believed that the operating results of Laidlaw Education under Hach's management were waning; (2) he believed that Hach's management forecasts as to Laidlaw Education's future performance were weak; (3) he believed that Hach's management of his subordinates had caused disruption over the issue of centralization; and (4) he believed that Hach's management had negatively impacted the relationship between Laidlaw Education and Laidlaw employees located in Burlington, Ontario.

(Defendants' Rule 56 Statement, ¶ 28.) In support of this assertion, the defendants cite the depositions of Grainger and Hach along with several exhibits. Plaintiff disputes this description of the statements made by Grainger, but his Rule 56 Statement, and

his Statement of Additional Facts, do not raise a genuine issue.[1] Therefore, we accept defendants' version of what Grainger said to the Board of Directors.

We will now consider each of the four statements.

### Statement No. 1

### "[T]he operating results of Laidlaw Education under Hach's management were waning."

According to Webster's Third New International Dictionary (1971), "waning" is the present participle of "wane," which means

---

[1] No one remembers the exact words Grainger used in his telephonic report to the Board members. He made some notes during the conversation, and they read as follows:

(1) "Division results waning;" (2) "Forecasts weak;" (3) Alienated Burlington staff;" and (4) "Subordinates centralized organization."

(Defendants' Rule 56 Statement, ¶ 32.) Grainger referred to these notes in formulating his answers to plaintiff's interrogatories, where he described his statements to the Board as set forth in ¶ 28 of his Rule 56 Statement.

Hach refers us to his Statement of Additional Facts, ¶ 68, where he offers a different version of three of the statements: the operating results, instead of "waning," were "dwindling;" Hach's estimates as to Laidlaw's future performance were "fragile and weak" rather than "weak;" and Hach's management had "destroyed" the relationship between Laidlaw Education and Laidlaw employees located in Burlington, Ontario, rather than having "negatively impacted the relationship." The differences seem minor, with the exception of the difference between "destroyed" and "negatively impacted," which is more substantial.

Hach's record references in support of his version of Grainger's statements do not bear out his version. His primary reference is to pages of Grainger's deposition which reflect that when Grainger was asked whether he made certain statements to the Board, he consistently replied that he did not believe so, that his best recollection of what he told the Board was set out in his Answers to Interrogatories. Plaintiff's other reference is to pages of his own deposition in which he testified about what Jack Edwards, a member of the Board, had told him Grainger had said. This hearsay statement of Edwards did not describe any particular language Grainger had used and certainly does not support Hach's Rule 56 statement as to what Grainger had said. Moreover, the hearsay of Edwards is no more admissible on a summary judgment motion than it would be at a trial. See Boyce v. Moore, 314 F.3d 884, 889 (7th Cir. 2002).

It is for these reasons that we have rejected Hach's version of the allegedly defamatory statements and have decided to rely instead on Grainger's version as set forth in his Rule 56 Statement.

"to decrease in size or extent: dwindle." It is not a word that denotes a specific decrease in size, but simply a decrease which could be of any size.

The evidence shows that there was a factual basis for Grainger's statement that the Division results were waning, or dwindling, which means the same thing. The Division's Income Before Interest and Taxes ("IBIT") declined from $141.8 million in 1999 to $128.7 million in 2000, and to $112.7 million in 2001. (Defendants' Memorandum at 5.) However one views these results, the trend was downward, and by not insignificant amounts. "Waning" seems a true statement, not a false statement. But apart from the matter of truth (which would get into Hach's argument that other financial measures must be given consideration), it is clear that Hach's statement was his conclusion about the significance of the figures. The facts (the IBIT figures) are not in dispute, and, like the defendants in <u>Haynes</u>, 8 F.3d at 1227, Grainger was "entitled to [his] interpretation of them."

Plaintiff argues that other financial figures concerning the Division's performance indicate that the Division was doing well, so that Grainger's statement that the results were "waning" was in fact untrue. But it is immaterial whether other financial data indicate a trend that could be considered not to be "waning," because the question is not whether Grainger's conclusion was

correct, or even reasonable. The question is whether it was an opinion.

If there were evidence that his statement to the Board did not reflect his actual opinion, and that he was attempting in bad faith to prejudice Hach in the eyes of the Board, that would present a different question. But there is no such evidence.

### Statement No. 2

#### "Hach's management forecasts as to Laidlaw Education's future performance were weak."

This is very similar to the "waning results" statement in that it is a characterization of uncontested facts. It also uses a relative term, "weak," which tends to indicate an opinion rather than a statement of fact. "Weak" is defined as "lacking strength: not strong ... resulting from or indicating lack of judgment, discernment, or firmness." Webster's Third New International Dictionary 2588-89 (1971). We have mentioned the actual IBIT figures for 1999, 2000 and 2001. Hach's forecasts of what the IBIT would be for those years were lower: $132.0 million for 1999, $123.7 million for 2000 and $104.2 million for 2001. One might argue that the differences between actual and forecast figures were not so substantial as to justify characterizing the forecasts as "weak." But this would be a matter of opinion. It reminds us of the discussion in <u>Hopewell</u>, 701 N.E.2d at 104-05, about the word "incompetent." The Court observed that "[o]ne person's idea of when one reaches the threshold of incompetence will vary from the

next person's." Id. at 104. We believe the same can be said of the "weak" forecasts in this case.

### Statement No. 3

### "Hach's management of his subordinates had caused disruption over the issue of centralization."

The most relevant dictionary definition of "disrupt" is to "throw into disorder or turmoil." Webster's Third New International Dictionary 656 (1971). "Disruption" is "the act or process of disrupting: the state of being disrupted." Id. It is a word that does not signify a precise condition, but, rather, a condition that could vary in extent. It follows that one person's opinion as to whether a relationship has been disrupted might differ from another person's opinion. In this case, the evidence shows that several employees complained to Grainger about disagreements with Hach concerning efforts to centralize operations. (Defendants' Rule 56 Statement, ¶¶ 17, 18.) Whether "disruption" might have been too strong a word is not the issue. The point is that it was not a statement of fact that could be objectively verified as true or false. It was, to use the words of the Court in Hopewell, 701 N.E.2d at 104, "too broad, conclusory, and subjective to be objectively verifiable."

**Statement No. 4**

**"Hach's management had negatively impacted
the relationship between Laidlaw Education and Laidlaw
employees located in Burlington, Ontario."**

"Negatively impacted" is another phrase that lacks precision. It is a characterization that is obviously a statement of opinion. In our memorandum opinion denying in part the defendants' motion to dismiss, we relied on the language of the complaint that attributed to Grainger the statement that Hach's management "destroyed the previously healthy working relationship between Laidlaw Education and the company personnel located in Burlington, Ontario." We stated that "the word 'destroyed' is specific enough to be capable of proof or disproof." (Mem. Op., Nov. 5, 2002 at 9.) Grainger's answers to interrogatories, incorporated in paragraph 28 of Defendants' Rule 56 Statement, use the phrase "negatively impacted." But defendants' memorandum in support of their motion for summary judgment relies on Grainger's notes of his telephone conversation (set out at Defendants' Rule 56 Statement, ¶ 32), which has the words "Alienated Burlington staff.". Defendants' memorandum argues that "alienated" is an opinion rather than a statement of fact capable of proof or disproof. (Defendants' Memorandum at 6-7.) We agree, and whether the actual words used by Grainger were "negatively impacted" or "alienated" (there is no evidence that he said "destroyed"), the result is the same. It was a nonactionable opinion he was expressing. Moreover, it was an

opinion supported by complaints about Hach from members of the Burlington staff. (Defendants' Rule 56 Statement, ¶ 22.)

Our conclusion is that all of Grainger's allegedly defamatory statements were statements of opinion, not fact, and that they will not support an action for defamation.

### INTENTIONAL INTERFERENCE WITH HACH'S REASONABLE BUSINESS EXPECTANCY

Count III of the complaint alleges that Hach had a reasonable expectancy that he would be retained as president and CEO of Laidlaw Education for an indefinite time and that Grainger tortiously interfered with that expectancy by making the intentionally false statements to the Laidlaw Board that have been discussed above.[2] Hach argues that Grainger's motive for defaming him was his desire to replace Hach as president and CEO, which in fact he eventually did.

The law pertaining to Count III involves the doctrine of qualified privilege. A corporate officer, acting in the interest of the corporation, may, without incurring liability, induce the corporation to breach a contract. To be liable for inducing the breach, the employee must act "without justification or maliciously." Swager v. Couri, 395 N.E.2d 921, 927 (Ill. 1979). The same rule applies to suits for intentional interference with business expectancy, as indicated by Vickers v. Abbott

---

[2] Laidlaw Transit, Inc. and Peter Widdrington have been dismissed as defendants in this count, and Grainger remains as the sole defendant.

Laboratories, 719 N.E.2d 1101, 1116 (Ill. App. Ct. 1999), where it was held that plaintiff in such a case would have to prove that the defendants' actions were "unjustified and malicious."

In this case, there was no evidence that Grainger was not acting in what he thought was the best interest of Laidlaw Education. Hach argues that Grainger was solely concerned with his own advancement and gave no thought to the welfare of the corporation. The problem with this argument is that it lacks evidence to support it. As the Court stated in Vickers, "once a defendant has established a qualified privilege, the plaintiff must come forward with actual evidence creating an issue of fact." 719 N.E.2d at 1110.

### CONSPIRACY TO INTERFERE WITH REASONABLE BUSINESS EXPECTANCY

Count IV of the complaint charges a conspiracy among Grainger, Peter Widdrington, and Laidlaw Transit, Inc. to interfere with Hach's reasonable business expectancy. What we have said in regard to Count III applies here as well: there is no evidence of improper motive in the termination of Hach. Nor is there any evidence that Widdrington conspired with Hach. Finally, Laidlaw Transit, Inc. cannot be found guilty of conspiring with Grainger, its agent, unless Grainger was acting in his own interest and outside the scope of his agency. "The acts of an agent are considered in law to be the acts of the principal. Thus a conspiracy does not exist between a principal and an agent or

servant." <u>Salaymeh v. Interqual, Inc.</u>, 508 N.E.2d 1155, 1158 (Ill. App. Ct. 1987); <u>see also</u> <u>Bilut v. Northwestern Univ.</u>, 692 N.E.2d 1327, 1332-33 (Ill. App. Ct. 1998).

Because there is no genuine issue as to whether Grainger was acting in the interest of Laidlaw Education, there can be no actionable conspiracy.

## CONCLUSION

The motion of the defendants Laidlaw Transit, Inc., Peter Widdrington and John R. Grainger for summary judgment on all remaining claims is allowed, and judgment will be entered in favor of the defendants and against the plaintiff Robert E. Hach dismissing this cause with prejudice.

DATE: November 22, 2004

ENTER: _____
John F. Grady, United States District Judge